IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NORWEGIAN CRUISE LINES, INC., )<br>a Florida Corporation, and NORWEGIAN )<br>CRUISE LINE LIMITED, a Bermuda )<br>Corporation. )<br>)<br>Defendants. ) | CIVIL NO. **01-0244**<br><br>**CIV - KING**<br><br>MAGISTRATE JUDGE<br>O'SULLIVAN |

## **COMPLAINT**

The United States of America alleges:

1.      This action is brought by the United States pursuant to title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12181 - 12189, against Norwegian Cruise Line Limited and Norwegian Cruise Lines, Inc. (collectively, "NCL" or "Defendants"). NCL owns and operates a cruise line business, offering cruise trips in the United States and throughout the world.

### Jurisdiction and Venue

2.      This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B), and 28 U.S.C. §§ 1331 and 1345. This Court has authority to grant equitable relief, monetary damages and civil penalties under 42 U.S.C. § 12188(b)(2) and 28 U.S.C. § 2201 and 2202.

3.      Pursuant to 28 U.S.C. § 1391, venue is proper in the Southern District of Florida.

1



## Parties

4. The Attorney General is authorized under title III of the ADA to bring suit on behalf of the United States if she has reasonable cause to believe that an entity is engaged in a pattern or practice of discrimination under title III, or that persons with disabilities have been discriminated against under title III and this discrimination raises issues of general public importance. 42 U.S.C. § 12188(b)(1)(B).

5. Norwegian Cruise Line Limited is a Bermuda corporation with its principal place of business in Miami, Florida.

6. Norwegian Cruise Line Limited is a private entity within the meaning of Sections 301 and 304 of the ADA, 42 U.S.C. §§ 12181 and 12184, and, thus, subject to the requirements of title III of the ADA, 42 U.S.C. §§ 12181 - 12189.

7. Norwegian Cruise Lines, Inc. is a Florida corporation with its principal place of business in Miami, Florida.

8. Norwegian Cruise Lines, Inc. is a private entity within the meaning of Sections 301 and 304 of the ADA, 42 U.S.C. §§ 12181 and 12184, and, thus, subject to the dictates of title III of the ADA, 42 U.S.C. §§ 12181 - 12189.

## General Allegations

9. Upon information and belief, NCL owns and operates several cruise ships, each of which can accommodate over 1500 passengers on a given cruise. NCL offers hundreds of cruise trips that originate and terminate in United States ports.

10. Each cruise ship NCL owns and operates contains, inter alia, places of lodging, restaurants, bars, theaters, auditoriums, retail stores, gift shops, and recreational facilities.

11. NCL's cruise ships provide the general public with transportation services on a regular and continuing basis.

12. NCL is a private entity that owns, leases or operates places of public accommodation and is, therefore, a public accommodation within the meaning of title III of the ADA, 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104.

13. NCL is a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce, and therefore is covered by title III of the ADA as a specified public transportation service, 42 U.S.C. § 12184(a), 42 U.S.C. 12181(10) and 28 C.F.R. § 36.310.

Count I
Violations of Title III of the ADA
With Regard to Complainant, Stephen Gomes

14. The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

15. Stephen Gomes is blind and has been since birth. He is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

16. In April 1999, Mr. Gomes booked a cruise on the NCL cruise ship "Norwegian Sea." The Norwegian Sea was scheduled to depart from Houston, Texas, on August 22, 1999, and spend approximately seven days in the Caribbean sea before returning to Houston. Mr. Gomes booked the cruise through his travel agent, and paid NCL $1,216.

17. NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking. Pursuant to this requirement, at the time of booking, Mr. Gomes, through his travel agent, informed NCL that he was blind.

18. In May of 1999, NCL informed Mr. Gomes, through his travel agent, that he was required to provide NCL with a doctor's note certifying that he was "fit to travel."

19. Mr. Gomes, believing NCL's policy was discriminatory, refused to provide a doctor's note to NCL. On June 11, 1999, NCL informed Mr. Gomes, through his travel agent, that he would be permitted to travel on the Norwegian Sea, as scheduled, without a doctor's note.

20. On August 22, 1999, Mr. Gomes flew from his home in Denver, Colorado to Houston, Texas and arrived at the boarding area for passengers of the Norwegian Sea. NCL staff informed Mr. Gomes that he would need to be examined by the ship's physician before he would be permitted to board.

21. After several hours of waiting, Mr. Gomes was approached by NCL representatives, including the ship's physician, who informed him that he would not be permitted to board the ship because he is blind and was traveling alone.

22. As a direct and proximate result of NCL's decision to deny Mr. Gomes access to the Norwegian Sea due to his vision impairment, he was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Sea.

23. NCL's actions caused Mr. Gomes to suffer financial harm, humiliation, emotional distress, frustration, and anxiety.

24. Mr. Gomes would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

25. NCL's conduct described in paragraphs 17 through 24 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

    a. Discriminates against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or

    accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

b.  Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.  Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.  Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

e.  Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f.  Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

26.     NCL's treatment of Mr. Gomes constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

## Count II
## Violations of Title III of the ADA
## With Regard to Complainant, Joy Stigile

27.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

28.     Joy Stigile is blind. She is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

29.     Joy Stigile married Robert Stigile on June 18, 2000.

30.     In early March of 2000, the Stigiles booked and paid a deposit for a cruise for their honeymoon on the NCL cruise ship, "Norwegian Wind." The Norwegian Wind was scheduled to depart on June 19, 2000, and travel throughout Alaska.

31.     NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking. Pursuant to this requirement, at the time of booking, Joy Stigile informed NCL that she is blind.

32.     On or about March 10, 2000, NCL informed Joy Stigile that she would not be permitted to board the Norwegian Wind unless she signed a form. The form stated, in part, that (i) the cruise presents "inherent risks" for any passenger with vision impairments; (ii) she must assume all such risks; (iii) she should consult with her physician regarding these risks; and, (iv) she should obtain ship travel insurance.

33.     On information and belief, NCL sends the form referenced in paragraph 32 to all prospective passengers who have identified themselves to NCL as people with vision

impairments, but not to other passengers.

34. Joy Stigile refused on principle to sign the form referenced in paragraph 32. After extended negotiations between NCL and Joy Stigile, NCL informed her on June 9, 2000 that she would be permitted to travel on the Norwegian Wind, as scheduled, without signing any release forms. However, since it was only nine days before the wedding, she and Robert Stigile had made other honeymoon arrangements fearing that they would not be permitted to board the cruise ship. She therefore informed NCL that she would not travel on that Norwegian Wind cruise.

35. The Stigiles requested that their $500 deposit be refunded, but NCL refused.

36. As a direct and proximate result of NCL's decision to impose extra conditions on Joy Stigile due to her vision impairment, she was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Wind.

37. NCL's actions caused Joy Stigile to suffer financial harm, emotional distress, frustration, and anxiety.

38. Joy Stigile would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

39. NCL's conduct described in paragraphs 31 through 36 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

    a. Discriminates against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

    b.    Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

    c.    Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

    d.    Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

    e.    Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

    f.    Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

40.    NCL's treatment of Joy Stigile constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

Count III
Violations of Title III of the ADA
With Regard to Complainant, Robert Stigile

41.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

42.     Robert Stigile is blind. He is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

43.     Robert Stigile married Joy Stigile on June 18, 2000.

44.     In early March of 2000, the Stigiles booked and paid a deposit for a cruise for their honeymoon on the NCL cruise ship, "Norwegian Wind." The Norwegian Wind was scheduled to depart on June 19, 2000, and travel throughout Alaska.

45.     NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking. Pursuant to this requirement, at the time of booking, Robert Stigile informed NCL that he is blind. He also informed NCL that he intended to travel with his service animal.

46.     On or about March 10, 2000, NCL informed Robert Stigile that he would not be permitted to board the Norwegian Wind unless he signed a form. The form stated, in part, that (i) the cruise presents "inherent risks" for any passenger with vision impairments; (ii) he must assume all such risks; (iii) he should consult with his physician regarding these risks; and, (iv) he should obtain ship travel insurance.

47.     On information and belief, NCL sends the form referenced in paragraph 46 to all prospective passengers who have identified themselves to NCL as people with vision impairments, but not to other passengers.

48.     On or about March 10, 2000, NCL asked Robert Stigile to sign an additional release dealing more specifically with his service animal. The form stated, in part, that he should

9

travel "with an individual in the same cabin who is not sight-impaired," a person who would be "able to provide assistance in the unlikely event of an emergency aboard the ship."

49. On information and belief, NCL sends the release form referenced in paragraph 48 to all prospective passengers who have identified themselves to NCL as people with vision impairments and who inform NCL that they intend to bring a service animal aboard the ship.

50. Robert Stigile refused on principle to sign the forms referenced in paragraphs 46 and 48. After extended negotiations between NCL and Robert Stigile, NCL informed him on June 9, 2000 that he would be permitted to travel on the Norwegian Wind, as scheduled, without signing any release forms. However, since it was only nine days before the wedding, he and Joy Stigile had made other honeymoon arrangements fearing that they would not be permitted to board the cruise ship. He therefore informed NCL that he would not travel on that Norwegian Wind cruise.

51. The Stigiles requested that their $500 deposit be refunded, but NCL refused.

52. As a direct and proximate result of NCL's decision to impose extra conditions on Robert Stigile due to his vision impairments, he was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Wind.

53. NCL's actions caused Robert Stigile to suffer financial harm, emotional distress, frustration, and anxiety.

54. Robert Stigile would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

55. NCL's conduct described in paragraphs 45 through 52 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

    a. Discriminates against individuals on the basis of disability in the full and

        equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

b.   Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.   Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.   Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

e.   Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f.   Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

56. NCL's treatment of Robert Stigile constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

### Count IV
### A Pattern or Practice of Discrimination
### With Regard to the Complainants and Other Individuals with Disabilities in Violation of
### Title III of the ADA

57. The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

58. NCL's general policy and practice has been to impose requirements on prospective passengers with disabilities that are not imposed on prospective passengers without disabilities. NCL's advertising brochure states, "All passengers with a disability must be self-sufficient and should travel with a passenger who will provide any assistance needed during the cruise and in the event of an emergency." In addition, NCL's "Passenger Ticket Contract," sent to passengers prior to the scheduled cruise, states, in part, that "a medical certificate certifying fitness for travel may be required," that for "reasons of passenger safety and well-being, Carrier may require such persons to be accompanied by, and share the same cabin with, an adult who is not physically impaired as aforesaid," and that NCL "reserves the right to refuse or revoke passage to anyone" who is, in its sole judgment, "unfit for travel."

59. As a direct and proximate result of NCL's policies and practices discriminating against people with vision impairments, referenced in paragraph 58 and elsewhere in this Complaint, Stephen Gomes, Joy Stigile, Robert Stigile, and, upon information and belief, other individuals with vision impairments have been denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ships.

60. NCL's actions have caused Mr. Gomes, Joy Stigile, Robert Stigile, and, upon information and belief, other individuals with vision impairments to suffer financial harm, humiliation, emotional distress, frustration, and anxiety.

61. NCL's conduct generally described in paragraphs 58 through 59 and more specifically described elsewhere in this complaint constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

    a. Discriminates against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

    b. Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

    c. Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

    d. Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

  e. Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

  f. Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

62. NCL's general policy and practice imposing requirements on prospective passengers with disabilities that are not imposed on prospective passengers without disabilities, and its treatment of Mr. Gomes, Joy Stigile, Robert Stigile, and other individuals with disabilities, constitutes (a) a pattern or practice of discrimination within the meaning of 42 U.S.C. §12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and (b) discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court:

A. Declare that NCL's discriminatory practices as set forth above violate the Americans with Disabilities Act, 42 U.S.C. §§ 12101 - 12189, and the U.S. Department of Justice's implementing regulation, 28 C.F.R. Part 36;

B. Enjoin NCL, its officers, agents and employees, and all other persons in active concert or participation with any of them, from discriminating on the basis of disability against any individual seeking to participate in a cruise on an NCL cruise ship;

C.   Order NCL to institute and implement policies and procedures that will eliminate discrimination on the basis of disability.

D.   Award compensatory damages against NCL in an amount to be determined at trial in favor of Stephen Gomes, Joy Stigile, Robert Stigile and all other individuals with disabilities who have been injured as a direct and proximate result of NCL's violations of Title III of the ADA;

E.   Assess a civil penalty against the Defendants in the amount authorized by 42 U.S.C. § 12188(b)(2)(C) and 28 C.F.R. § 36.504 to vindicate the public interest; and

F.   Order such other appropriate relief as the interests of justice may require.

Respectfully submitted,

JANET RENO
Attorney General
of the United States

BARRY SABIN
ACTING U.S. ATTORNEY
Southern District of Florida

BILL LANN LEE
Assistant Attorney General
Civil Rights Division

VERONICA HARRELL-JAMES
Assistant United States Attorney
99 N.E. 4th Street, 6th Floor
Miami, Florida 33132
(305) 961-9327
(305) 530-7976 (facsimile)
Fla. Bar No. 644791

JOHN L. WODATCH, Chief
L. IRENE BOWEN, Deputy Chief

DANIEL W. SUTHERLAND
DANIEL I. WERFEL
Attorneys, Disability Rights Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66738
Washington, D.C. 20035-6738
(202) 616-5540, 5510
(202) 307-1197 (facsimile)

January __, 2001

# CIVIL COVER SHEET     01-0244

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV - KING**

**I (a) PLAINTIFFS**
United States of America,

**DEFENDANTS**
Norwegian Cruise Lines, a Florida Corp. and Norwegian Cruise Line Limited, A Bermuda Corp.

**MAGISTRATE JUDGE O'SULLIVAN**

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

A-clarke / 01cv244 King / O'Sullivan

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Veronica Harrell-James, AUSA
U.S. Attorney's Office
99 NE 4th St. Miami, FL 33132 (305)961-9327

**ATTORNEYS (IF KNOWN)**

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)
- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question
- [ ] 4 Diversity

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Case Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated of Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 USC §§12181-12189.

**IVa.** 7 days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 States Reapportionment |
| 120 Marine | 310 Airplane | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 630 Liquor Laws | 820 Copyrights | 450 Commerce/ICC Rates/etc. B |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers Liability | 640 R.R. & Truck | 830 Patent | 460 Deportation |
| 151 Medicare Act | 340 Marine | PERSONAL PROPERTY | 650 Airline Regs | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) B | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | **B SOCIAL SECURITY** | 810 Selective Service |
| 153 Recovery of Overpayment of Veterans Benefits B | 350 Motor Vehicle | 371 Truth in Lending B | 690 Other | 861 HIA (1395ff) | 850 Securities/Commodities/Exchange |
| 160 Stockholders Suits | 355 Motor Vehicle Product Liability | 380 Other Personnel Property Damage | **A LABOR** | 862 Black Lung (923) | 875 Customer Challenge 12 USC3410 |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| 195 Contract Product Liability | | | 720 Labor Management Relations B | 864 SSID Title XVI | 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | 730 Labor Management Reporting & Disclosure Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence | 740 Railway Labor Act | **A FEDERAL TAX SUITS** | 894 Energy Allocation Act |
| 220 Foreclosure B | 442 Employment | Habeas Corpus | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing Accommodations | 530 General * | 791 Employee Ret. Inc. Security Act B | 871 IRS-Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Torts to Land | 444 Welfare | 535 Death Penalty | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | [X] 440 Other Civil Rights | 540 Mandamus & Other * | | | 890 Other Statutory Actions * |
| 290 All Other Real Property | | 550 Civil Rights * A or B | | | * A or B |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)
- [X] 1 Original Proceeding
- [ ] 2 Removed From State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Refiled
- [ ] 5 Transferred from another district (Specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A [ ] CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND: [ ] YES [X] NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions): JUDGE _____ DOCKET NUMBER _____

DATE 1/17/2001

SIGNATURE OF ATTORNEY OF RECORD
Veronica Harrell-James, AUSA

UNITED STATES DISTRICT COURT
S/F 1-2
REV 9/94

FOR OFFICE USE ONLY: Receipt No. _____
Date Paid: _____
Amount: _____
M/ifp: _____