IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-0244 CIV-KING/O'SULLIVAN

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

NORWEGIAN CRUISE LINES, INC.,
a Florida Corporation, and NORWEGIAN
CRUISE LINE LIMITED, a Bermuda
Corporation,

       Defendants.

_____/

## PLAINTIFF UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER QUASHING DEFENDANTS' SUBPOENA

The United States comes before the Court to request it to exercise its authority under Rules 26(b)(2) and 26(c) of the Federal Rules of Civil Procedure to prevent the requested depositions of Department of Justice ("Department" or "DOJ") officials, or other government officials who might be designated to speak for the United States, noticed in an action pending in this Court. The Department requests a protective order because the depositions and accompanying requests for related documents are unlikely to lead to the discovery of admissible evidence, seek the discovery of privileged information or information more easily obtained elsewhere, and are unduly burdensome. These discovery requests are in essence a litigation tactic designed to harass federal government officials and to discourage and impede DOJ's civil law enforcement efforts. As shown more fully below, discovery of this sort seeks to intrude improperly into the deliberative processes of agency decision makers and litigators and into the government's exercise of prosecutorial discretion, and is therefore prohibited by the attorney-client



privilege, the deliberative process privilege, the work product doctrine, and the law enforcement/investigative files privilege. This court should grant the motion for a protective order and quash the testimony and document subpoenas.

I.    **Background**

On January 19, 2001, the United States filed a Complaint in the United States District Court for the Southern District of Florida against Norwegian Cruise Lines, Inc., and Norwegian Cruise Line Limited ("Defendants"), owners and operators of a cruise line business. The Complaint alleged that Defendants violated Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12181-12189, by imposing unfair terms and conditions of travel on persons with vision impairments, thus denying such persons equal enjoyment of its cruise ships. On May 15, 2001, the Court entered an Order setting September 10, 2001, as a trial date for the matter, with all discovery to be completed by August 12, 2001.

On July 19, 2001, Defendants' counsel issued a Subpoena to "Department of Justice, Office of Daniel I. Werfel, 1100 Vermont Avenue, N.W., Washington, D.C. 20005-6738 [sic]"[1] commanding the Department of Justice (DOJ) to designate "one or more officers, directors, or managing agents, or other persons who consent," to testify in the present case.[2] A Notice of Deposition served by facsimile

_____

[1] Mr. Werfel is one of the DOJ attorneys assigned to this matter. Mr. Werfel's office at the Department of Justice is located at 1425 New York Avenue in Washington, D.C.

[2] The United States acknowledges that, under Rule 45 and Southern District of Florida Local Rules app. A, because the Defendants commanded the DOJ deponent, by a Notice of Taking Deposition Duces Tecum, to appear in Washington, D.C., this or some similar motion could also be filed in the United States District Court for the District of Columbia. Because the Defendants also noticed the deposition under Rule 30(b)(6), however, and because this Court is already conversant

the same day sought the appearance in Washington on August 6, 2001, pursuant to Rule 30(b)(6), of

"[t]he person with the most knowledge" to be deposed regarding topics including:

1. Suits filed by the Department of Justice against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present.

2. The final result of all suits filed by the Department of Justice against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present.

3. Congress' direction to the Attorney General and the Department of Transportation to issue regulations on or before July 26, 1991 to effectuate the Americans with Disabilities Act.

4. Guidance as to what would constitute a reasonable modification of the policies, practices or procedures set forth in the Complaint. . . .

5. Guidance as to what would constitute the appropriate criteria for screening out potential passengers on foreign flagged cruise ships without violating the Americans with Disabilities Act necessary for a foreign flagged cruise ship to provide the goods, services, facilities, privileges, advantages, or accommodations being offered. . . .

6. Guidance as to how a foreign flagged cruise ship is required to modify its policies, practices and procedures to avoid discrimination under the Americans with Disabilities Act.

7. Guidance as to the extent of the individualized inquiry necessary to determine the reasonableness of modifications to cruise ship policies, practices and procedures set forth in the Complaint. . . .

8. Guidance as to whether an individualized assessment must be made as to whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

9. Guidance as to the extent of any individualized assessment that must be made to determine whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

10. Guidance as to whether a private entity that does not own, lease, lease to or operate a place of public accommodation may properly be sued for discrimination under the Americans with Disabilities Act.

11. Guidance as to how owners of the foreign flagged cruise ship may reconcile the laws of its home state, international law applicable to cruise ships and the requirements imposed by the Americans with Disabilities Act.

---

with the legal issues involved in this lawsuit, the United States respectfully moves in this Court for a protective order that will quash the deposition and document subpoena.

> 12. The Title III regulations for which the Department of Justice is charged with responsibility under the Americans with Disabilities Act.

An "Exhibit Duces Tecum" attached to the Subpoena commanded DOJ to produce a number of documents at the same time as the deposition, including all "complaints" filed against cruise lines or owners of cruise ships for ADA violations since January 1, 1992; all final judgments, consent decrees, or other court documents indicating the "final result" of all such complaints, and all documents relating to items 3, 5, 6, 7, and 8 from the list of topics for deposition.

On July 25, 2001, Defendants served the United States with a Notice of Deposition directed to "Plaintiff, United States of America, The person with the most knowledge regarding the topics referenced below." This Notice identified 19 topics for inquiry at deposition, including the 12 listed in the July 19 Notice, duplicates of three of those topics, and four other topics, including

> 14. Regulations as to how a foreign flagged cruise ship is required to modify its policies, practices and procedures to avoid discrimination under the Americans with Disabilities Act.
> 15. Regulations as to the extent of the individualized inquiry necessary to determine the reasonableness of modifications to foreign flagged cruise ship policies, practices and procedures.
> 16. Guidance as to whether an individualized assessment must be made as to whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.
> 17. Guidance as to the extent of any individualized assessment that must be made to determine whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

This second 30(b)(6) deposition is to be taken in Miami, Florida, and is also scheduled for August 6, 2001.

## II.    The Court Should Grant the United States' Motion for a Protective Order

Under Federal Rules of Civil Procedure 26(b)(2) and 26(c), a court may issue a protective

order to prevent a party from engaging in discovery that causes annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Here, Defendants seek to depose DOJ and other federal government officials for the sole purpose of discovering the United States' legal arguments. This discovery should not be permitted because the information Defendants seek is not reasonably calculated to lead to the discovery of admissible evidence; the proposed discovery of the government officials will intrude upon facts protected by the attorney-client privilege, the deliberative process privilege, the work product doctrine, and the law enforcement/investigative files privilege; Defendants possess other, less burdensome means of obtaining the information sought in the July 19 subpoena and July 25 notice; and the burden of the proposed discovery far outweighs any benefit.

### A.   Defendants' Discovery Requests Are Not Reasonably Calculated To Lead to the Discovery of Admissible Evidence

Rule 26(b)(1) was added to the Federal Rules of Civil Procedure in 1983 to deal with the problem of "over-discovery." Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 187 (1st Cir. 1989) (citing Fed. R. Civ. P. 26 advisory committee note (1983 amendments)). Foremost under Rule 26(b)(1), discovery requests must be *relevant*: regardless of whether the information sought will be admissible at trial, the discovery must appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). It is axiomatic, however, that such evidence or pre-evidence can only consist of *factual* material, not legal conclusions. "[T]he most fundamental principle of discovery [is] that the coercive power of discovery can be invoked to uncover facts, but the task of researching the law is left to the parties themselves." Indiana Coal Council v. Hodel, 118 F.R.D. 264, 265-66 (D.D.C. 1988); accord United States v. Block 44, 177 F.R.D. 695, 695 (M.D. Fla. 1997); In

re Olympia Holding Co., 189 B.R. 846, 853 (Bankr. M.D. Fla. 1995).

Nearly all of Defendants' July 19 and July 25 requests for deposition on the topics set forth in the 30(b)(6) Notice and the related subpoenaed documents fail this basic test of relevance; nearly all are requests for legal conclusions rather than facts, and thus barred by Rule 26(b)(1). For example, in 11 of the 16 topics, Defendants' planned inquiry is to elicit "guidance" as to various aspects of the ADA, apparently intended as bases for discussions of DOJ's conclusions regarding the interpretation and enforcement of the ADA. See July 19, 2001 Notice of Taking Deposition Duces Tecum [hereinafter July 19 Notice], topics 4-11; July 25, 2001 Notice of Taking Deposition [hereinafter July 25 Notice], topics 4-11, 16-18. Similarly, inquiry into topic 3, "Congress' direction to the Attorney General and the Department of Transportation to issue regulations on or before July 26, 1991 to effectuate the Americans with Disabilities Act," involves inquiries into DOJ's legal conclusions underlying the various regulations and the various roles of Congress and the Department of Transportation (DOT) in ADA enforcement.[3] See July 19 Notice, topic 3; July 25 Notice, topic 3. Discussion of topic 12, "[t]he Title III regulations for which the Department of Justice is charged with responsibility under the Americans with Disabilities Act," would most likely include inquiries by Defendants into DOJ regulatory processes. See July 19 Notice, topic 12; July 25 Notice, topics 12, 19. None of these proposed deposition topics, and requests for related documents are reasonably calculated to lead to the discovery of admissible evidence because they comprise discovery of "legal

---

[3] "Congress's direction" to these agencies is also a matter of public record and therefore may be obtained elsewhere. See infra Part II.C.1.

Additionally, the DOJ deponent could not, of course, opine as to DOT's ADA interpretations or enforcement policies.

6

interpretations" and not facts.  Indiana Coal Council, 118 F.R.D. at 267.  Because "[t]he Federal Rules are designed to provide parties access to the latter but not the former," id. at 267, the requested discovery should be denied.

**B.     Defendants' Discovery Requests Should Be Denied Because They Seek Information Protected by Privilege**

Also outside the scope of discovery, as regulated by Rule 26(b)(1), are materials protected by any evidentiary privilege.  See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, *not privileged*, that is relevant to the claim or defense of any party.") (emphasis added). Defendants seek communications and documents protected by at least four established evidentiary privileges: the attorney-client privilege, the deliberative process privilege, the attorney work product privilege, and the law enforcement/investigative files privilege.

**1.     Attorney-Client Privilege**

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  Upjohn v. United States, 449 U.S. 383, 389 (1981).  It is absolute. Coleman v. American Broad. Cos., Inc., 106 F.R.D. 201, 204 (D.D.C. 1985); SEC v. Gulf & W. Indus., Inc., 518 F. Supp. 675, 680 (D.D.C. 1981).  The purpose of the attorney-client privilege is to "encourage full and frank communication between the attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn, 449 U.S. at 389.  The privilege also protects communications from attorneys to their clients if the communications "rely on confidential information obtained from the client."  In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984).  "In the governmental context, the 'client' may be the agency and the attorney may be an

7

agency lawyer."  In re Bruce R. Lindsey (Grand Jury Testimony), Nos. 98-3060, 98-3062, 98-3072,

1998 WL 418780, *14 (D.C. Cir. July 27, 1998); accord Tax Analysts v. IRS, 117 F.3d 607, 618

(D.C. Cir. 1997); In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984); Sparton Corp. v. United

States, 44 Fed. Cl. 557, 567 (Fed. Cl. 1999).

In the event that the Defendants' requested DOJ deponent would be an official with whom

DOJ attorneys consult, much of the information sought by Defendants is protected by the attorney-

client privilege.  Any DOJ deposition designee would necessarily be an attorney.  Each of the

deposition topics is designed to delve into areas protected from disclosure.  Both within the context of

civil litigation in which the United States is a plaintiff, and in other enforcement and technical assistance

activities, DOJ attorneys consult regularly with other DOJ staff on the legal issues like those described

in the Notice.  See July 19 Notice, topics 3-12; July 25 Notice, topics 3-19.  Internal communications

as to "complaints" and "final results," see July 19 Notice, topics 1, 2; July 25 Notice, topics 1-2, are

also obviously protected by the attorney-client privilege, as well as Federal Rules of Evidence and Civil

Procedure.  See Fed. R. Evid. 408; Fed. R. Civ. P. 32, 33.  Based upon the Defendants' lists of

topics, the proposed depositions are unlikely to include any inquiries into factual matters which are not

protected from disclosure by the attorney-client privilege.

### 2.     Deliberative Process Privilege

The deliberative process privilege "allow[s] government agencies freely to explore possibilities,

engage in internal debates or play devil's advocate without fear of public scrutiny."  Assembly of the

State of California v. United States Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992).  It is

based on the premise "that those who expect public dissemination of their remarks may well temper

candor with a concern for appearances . . . to the detriment of the decisionmaking process." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-151 (1975), quoting United States v. Nixon, 418 U.S. 683, 705 (1974); see also Dudman Communications Corp. v. Dept. of the Air Force, 815 F.2d 1565, 1567 (D.C. Cir. 1987) (stating that the privilege "rests most fundamentally on the belief that were agencies forced to 'operate in a fishbowl' . . . the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer"). The privilege protects the quality of federal agency decisionmaking by serving

> to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege protects not only documents but the integrity of the deliberative process itself. See National Wildlife Fed'n v. Forest Service, 861 F.2d 1114, 1119 (9th Cir. 1988). The privilege protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. at 150 (quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966)).

Communications are protected by the deliberative process privilege if they are "both 'predecisional' and 'deliberative.'" Wolfe v. Department of Health & Human Services, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc) (citing EPA v. Mink, 410 U.S. 73,88 (1973)). A communication is

"predecisional" if it occurred "in order to assist an agency decisionmaker in arriving at his decision."
Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975). Communications are
"deliberative" if, absent protection from public disclosure, "information of that type would not flow
freely within the agency." Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d at 256.
Facts as well as deliberations are covered by the deliberative process privilege when "factual materials
are 'inextricably intertwined' with policy making recommendations so that their disclosure would
'compromise the confidentiality of deliberative information that is entitled to protection'" under the
privilege. Mink, 410 U.S. at 92; see also Ryan v. U.S. Dep't of Justice, 617 F.2d 781, 790 (D.C. Cir.
1980).

In this case, the government officials Defendants would have testify would undoubtedly be DOJ
or other government agency decision makers who participated in deliberative processes involved in
developing various aspects of the ADA, and who would be asked to speak to those processes in the
deposition. For example, assuming the term "guidance," as it is used in the deposition notice, means the
eliciting of oral communications from a DOJ representative as to legal issues described within the
topics, both generally and as to the present complaint, such testimony, even though it could only state
facts about past agency action, and not immediate legal advice, would necessarily reveal the
deliberative processes of the agency.[4] See July 19 Notice, topics 3-12; July 25 Notice, topics 3-12,

---

[4] Even if the term "guidance" is meant to include publicly available regulations, commentary,
technical assistance materials, and policy statements–and, indeed, the ADA itself–any deposition
testimony discussing such materials would also reveal the ongoing processes by which DOJ formulates,
publishes, and revises such materials. Such testimony is clearly covered by the deliberative process
privilege.

16-18.  Communications on these topics, and others requested by Defendants, see July 19 Notice,

topics 1, 2; July 25 Notice, topics 1, 2, 13-15, 19, will hamper DOJ's ADA enforcement efforts.  Cf.

FTC v. Grolier, Inc., 462 U.S. 19, 31 (1983) (Brennan, J., concurring) (stating that the ability of an

adverse party to "gain insight into an agency's general strategic and tactical approach to deciding when

suits are brought . . . and on what terms they may be settled" should be protected against).

### 3.    Work Product Doctrine

Rule 26(b)(3) incorporates the work product doctrine enunciated in Hickman v. Taylor, 329

U.S. 495 (1947), by "protect[ing] against disclosure of the mental impressions, conclusions, opinions,

or legal theories of an attorney . . . concerning the litigation."  Fed. R. Civ. P. 26(b)(3); see also Fed. R.

Civ. P. 26(b)(3) advisory committee note (1983 amendment);  SEC v. Morelli, 143 F.R.D. 42, 45

(S.D.N.Y. 1992).  The purpose of the work product doctrine is to preserve the integrity of the

adversary trial process by protecting the mental impression and legal strategy of an attorney as the

attorney prepares a case in contemplation of litigation and trial.  Jordan v. U.S. Dep't of Justice, 591

F.2d 753, 775 (D.C. Cir. 1978).  The privilege encourages effective legal representation by removing

counsel's fears that thoughts and information will be discoverable by an adversary.  Id.; see also

Morelli, 143 F.R.D. at 47.  In order to demonstrate that communications are protected by the work

product doctrine, the information sought must pertain to legal work undertaken in anticipation of

litigation or trial.  Jordan, 591 F.2d at 753.

The work product doctrine applies not only to documents, but also to deposition testimony.

See In re Sealed Case, 856 F.2d at 273 (citing cases).  It applies to DOJ attorneys acting as counsel

for the United States.  NLRB v. Sears, 421 U.S. 132, 154 (1975); cf. J.H. Rutter Rex Mfg. Co. v.

NLRB, 473 F.2d 223, 234 (5th Cir. 1973). Depositions of government attorneys who are involved in various aspects of law enforcement actions pose particularly difficult work product issues because it is difficult to examine an attorney to obtain facts about a lawsuit without intruding into the attorney's mental processes and litigation strategy -- areas that are entitled to almost absolute protection under the work product doctrine. See Morelli, 143 F.R.D. at 47 (quoting Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985).[5]

Defendants' deposition notices and production of related documents include areas of inquiry that will likely encroach upon material protected by the work product privilege. If Defendants' are allowed to interrogate DOJ or other government officials on "what would constitute the appropriate criteria for screening out potential passengers on foreign flagged cruise ships without violating [the ADA]," see July 19 Notice, topic 5; July 25 Notice, topic 5, for example, or "how a foreign flagged

_____

[5] In Morelli, the court noted that "the touchstone of the work-product inquiry is whether the discovery demand is made 'with the precise goal of learning what the opposing attorney's thinking or strategy may be,'" Morelli, 143 F.R.D. at 46-47 (quoting In re Grand Jury Subpoenas, 959 F.2d 1158, 1166 (2d Cir. 1992), and granted the protective order. After reviewing the areas of proposed examination, the court concluded that

> opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses. Such material is accorded almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's through processes and in ensuring that each side relies on its own in preparing their respective cases.

Id. at 47 (quoting Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir. 1985)); accord United States v. District Council of New York City, 1992 WL 208284, *6 (S.D.N.Y. 1992) (refusing to compel representatives of U.S. Attorneys' Office to answer questions at Rule 30(b)(6) deposition that would reveal attorney work product); SEC v. World-Wide Coin Investments, Ltd., 92 F.R.D. 65, 67 (N.D. Ga. 1981) (barring deposition of SEC trial counsel).

cruise ship is required to modify its policies, practices, and procedures to avoid discrimination under [the ADA]," see July 19 Notice, topic 6; July 26 Notice, topic 6, Defendants would be granted discovery on the prosecution of the United States' suit against them.  Defendants would be allowed entry to the litigation strategies the United States would consider, the strengths and weaknesses of such cases, and other information that falls within the work product privilege.  Similarly, any inquiry based on Defendants' request for production of "all complaints against cruise lines or owners of cruise ships for violations of [the ADA]," see July 19 Notice, topic 1 to the extent the phrase is meant to include confidential administrative complaints filed with DOJ itself, would also include inquiry into DOJ attorney work product and is similarly barred.  See also July 19 Notice, topics 2-11; July 25 Notice, topics 1-11, 13, 16-18.

### 4. Law Enforcement/Investigative Files Privilege

Federal regulations strictly prohibit the disclosure of information where the disclosure would reveal investigatory records compiled for law enforcement purposes and would interfere with enforcement proceedings or disclose investigative techniques and procedures such that their effectiveness would be impaired.  See 28 C.F.R. § 16.26(5).  Courts have upheld the privilege from disclosure of such records.  Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977); NLRB v. Robbins Tire and Rubber Co., 437 U.S. 214, 242-43 (1978); Barney v. IRS, 618 F.2d 1268, 1273-74 (8th Cir. 1980).  The law enforcement privilege presumptively protects investigative files and testimony about investigative files from disclosure.  In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988); Black v. Sheraton Corp. of America, 564 F.2d 531, 545 (D.C. Cir. 1977).  The privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the

confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Department of Investigation of the City of N.Y., 856 F.2d 481, 484 (2d Cir. 1988); accord United States v. Winner, 641 F.2d 825, 831 (10th Cir. 1981) (quoting Black, 564 F.2d at 831). See also Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552(b)(7)(C)-(D).

The privilege is not an absolute one, however, but rather requires the Court to balance the discovering party's "need for particular documents against the public interest in nondisclosure." Black, 564 F.2d at 547; In re Sealed Case, 856 F.2d at 272. The party seeking discovery bears the burden of demonstrating a particularized need that outweighs this public interest. In Re Sealed Case, 856 F.2d at 272; Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1341 (D.C. Cir. 1984); Collins v. Shearson/American Express, Inc., 112 F.R.D. 227, 228 (D.D.C. 1986). Courts have considered a number of factors in weighing these competing interests, including the extent to which disclosure will discourage citizens from giving information to law enforcement agents; the impact the disclosure will have on the persons who have given information to the government; whether the investigation, or litigation, is complete; whether the information sought is factual or an evaluative summary; whether the discovering party is the target of an investigation or defendant in an ensuing litigation; whether the party claiming the privilege has litigated in good faith; whether the discovery sought is available through other discovery or other sources; and the importance of the information to the plaintiff's case. See In re Sealed Case, 856 F.2d at 272 (citing Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

Consideration of these factors mandates nondisclosure of the testimony and documents at issue here, including any documents containing any "suits" or "complaints," including administrative

complaints, or "final results" of such complaints, filed with or by DOJ.  See July 19 Notice, topic 1, 2;

July 25 Notice, topic 1, 2.[6]  The Defendants apparently seek information on the status or outcome of

other DOJ investigations, which in turn may shed light upon DOJ ADA enforcement in this matter–an

ongoing litigation brought by the United States in good faith regarding Defendants' ADA violations.

Such information is vital to the decision-making processes in all DOJ enforcement activities, including

the present action.  Disclosure of this information, if compelled by Defendants' subpoena, will likely

have a chilling effect on the willingness of complaining witnesses or other witnesses to participate in this

or other DOJ ADA enforcement actions.  Because all these factors point towards nondisclosure of

many of the materials and communications sought by Defendants, and because of the public interest in

continuing, effective ADA enforcement by DOJ, the Court should grant this Motion and quash

Defendants' subpoena.

### C.    Defendants' Discovery Requests Are Outside the Permissible Scope Of Federal Discovery

"The scope of discovery is not limitless."  Envirosafe Servs. Inc. v. Envirosure Management

Corp., 1998 WL 62876, *1 (W.D.N.Y. June 9, 1988) (citing Oppenheimer Fund, Inc. v. Sanders,

437 U.S. 340, 351-52 (1978)).  Rule 26(b) includes limits on the general scope of federal discovery.

According to the Rule, discovery methods must be limited if a court determines that (i) discovery sought

is unreasonably cumulative or duplicative, or is obtainable from a more convenient or less burdensome

source; (ii) the discovering party has had ample opportunity by prior requests to obtain the information

---

[6] Of course, oral communications or documents that may be included within Defendants' other topic categories may also qualify for protection under this privilege.

sought; or (iii) the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(i)-(iii). In this case, each of these inquiries counsels protection of any nonprivileged government testimony and documents requested by Defendants.

### 1. Defendants Have Access to Less Burdensome Means of Discovery

In general, materials available as public records are nondiscoverable because they may be obtained from a more convenient source. See, e.g., Bleecker v. Standard Fire Ins. Co., 130 F. Supp.2d 726, 738-39 (E.D.N.C. 2000); I.H. Bass v. Gulf Oil Corp., 304 F. Supp. 1041, 1049-51 (S.D. Miss. 1969); Speedrack, Inc. v. Baybarz, 45 F.R.D. 254, 256 (E.D. Calif. 1968); cf. Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 557 (S.D.N.Y. 1994) (allowing deposition testimony where questioning sought information potentially leading to relevant evidence, including public record information). Requests to produce public records, or to depose witnesses about such records, "basically involve legal research [and are] therefore . . . not a proper subject of discovery." Fagan v. District of Columbia, 136 F.R.D. 5, 8 (D.D.C. 1991); accord Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181, 193-94 (D.D.C. 1998). Similarly, almost all of the nonprivileged materials Defendants seek here, and have identified as bases for deposition topics, including all regulations, Congressional regulatory "direction," "guidance," "complaints," "suits," and "final results" of complaints, are commonly publicly available through law libraries, electronic databases, and the Internet, and are not appropriate for discovery. See July 19 Notice, topics 1-12; July 25 Notice, topics 1-19.

Furthermore, the Defendants have already taken advantage of other, less intrusive means of obtaining any discoverable facts that could conceivably be revealed through the newly-proposed discovery. Indeed, a number of the items sought through Defendants' requests for testimony and

documents in the July 19 subpoena have been also been the subject of Defendants' earlier

Interrogatories, Requests for Production and Admissions, and Freedom of Information Act request.

Compare, e.g., Defendants' Second Set of Interrogatories, Interrogatory No. 9:

> Assuming that Title III of the ADA applies to foreign flagged cruise ships, a point which NCL does not concede, please explain, with specificity and provide citations where applicable to specific authority, precisely what type of "criteria" would be sufficient to satisfactorily demonstrate to the Department of Justice that the imposition or application of eligibility criteria which screen out or tend to screen out an individual with a disability would be necessary for the provisions of the goods, services, facilities, privileges, advantages or accommodations.

with July 19, 2001 Notice of Taking Deposition Duces Tecum, topic No. 5 ("Guidance as to what

would constitute the appropriate criteria for screening out potential passengers on foreign flagged cruise

ships without violating the [ADA] necessary for a foreign flagged cruise ship to provide the goods,

services, privileges, advantages, or accommodations being offered.").  Such duplicative discovery

requests violate Rule 26(b)'s limitations on cumulative discovery, and the Court should therefore deny

Defendants' requests.  See, e.g., Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C. Cir.

1983) (district court properly denied additional discovery when plaintiff already had an ample

opportunity for discovery); United States v. Upton, Civ. No. 3:92-CV-00524(AWT), 1995 WL

264247, *1 (D. Conn. Jan. 26, 1995) (district court denied depositions of Internal Revenue Service

agents because defendants had documents reflecting the information sought and the burden of the

depositions outweighed the likely benefit).

### 2.    Balancing of Interests Favors United States

Finally, "a court may use Rule 26(b) to limit discovery of agency documents or testimony of

agency officials if the desired discovery is relatively unimportant when compared to the government

interests in conserving scarce government resources." Exxon Shipping Co. v. United States Dep't of

Interior, 34 F.3d 774, 779-80 (9th Cir. 1994). In civil cases where parties have sought the deposition

of federal government officials, courts have required parties seeking such depositions to make a

showing that such depositions are "essential to prevent prejudice or injustice." United States Board of

Parole v. Merhige, 487 F.2d 25, 29 (4th Cir. 1973), cert. denied, 417 U.S. 918 (1974); Peoples v.

United States Dep't of Agriculture, 427 F.2d 561, 567 (D.D.C. 1970); Russ v. Ratliff, 68 F.R.D. 691,

692 (E.D. Ark. 1975) (subpoena for F.B.I. agent to appear for deposition and produce investigative

report quashed). The reason for such a high standard is that federal agency decision makers are

generally relieved from the burdensomeness of depositions, absent a showing that such a deposition is

necessary to prevent injustice, in order to "allow them to spend their time on the performance of official

functions, and to protect them from inquiries into the mental processes of agency-decision making."

Cornejo v. Landon, 524 F. Supp. at 122; see also United States v. Morgan, 313 U.S. 409, 422

(1941).[7]

The United States has the same concerns here should Defendants' discovery requests be

permitted. Virtually any civil action arising under Title III of the ADA will involve regulations issued by

DOJ. In addition, because DOJ is authorized to receive and investigate Title III complaints, some of

these same actions will also involve matters that have been the subject of DOJ investigations. 42

U.S.C. § 12188. Permitting the discovery by respondents and defendants in enforcement actions into

---

[7] Some of the testimony sought by Defendants may likely come from high level government
officials. It is well-established that such officials should not generally be required to testify concerning
their official actions. See United States v. Morgan, 313 U.S. 409, 422 (1941); Simplex Time
Recorder Co. v. Secretary of Labor, 766 F.2d 575, 586-87 (D.C. Cir. 1985).

all aspects of investigations and the regulatory processes would slow the work of the agency to a crawl. Hundreds of ADA complaints are received by DOJ every year; if in even a small fraction of those an agency official is required to respond to discovery, there would be no time for enforcement or other work the Department is obligated by Congress to perform. If Defendants are allowed to take the deposition they seek here, private litigants will expect to be able to routinely depose federal agency attorneys about the interpretation of law in every private action that involves federal laws. Such a result would seriously undermine the effectiveness of the government's civil law enforcement efforts.

This balancing of interests might result in a different outcome were the Defendants seeking relevant factual materials in their deposition and discovery requests. This is not that case. Although Defendants undoubtedly will argue that the legal conclusions they seek are important to competent litigation of their case, Defendants' interests cannot outweigh those of the United States as litigant in this particular matter, as well as the public interest in effective DOJ ADA enforcement, in nondisclosure of this essentially nonfactual material.

## III.   Conclusion

For the reasons stated above, the United States respectfully requests that its Motion for a

Protective Order Quashing Defendants' Subpoena be granted.

JOHN L. WODATCH
Chief
L. IRENE BOWEN
Deputy Chief

July 27, 2001

DANIEL I. WERFEL (Special Bar No. A5500561)
EUGENIA ESCH (Special Bar No. A5500563)
LEWIS BOSSING (Special Bar No. A5500574)
Trial Attorneys
Disability Rights Section
U.S. Department of Justice
P.O. Box 66738
Washington, D.C.  20035-6738
(202) 514-5510
(202) 307-1197 (facsimile)

BARRY SABIN
Acting U.S. Attorney

VERONICA HARRELL-JAMES
Assistant United States Attorney
99 N.E. 4th Street, 6th Floor
Miami, Florida 33132
(305) 961-9327
(305) 530-7976 (facsimile)

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Plaintiff United States' Memorandum of Law In

Support of Its Motion for a Protective Order Quashing Defendants' Subpoena was served by facsimile

and overnight express mail on this 27th day of July 2001 to the following counsel:

> Catherine J. MacIvor
> MASE & GASSENHEIMER, P.A.
> 1200 Brickell Bay Office Tower
> 1001 Brickell Bay Drive
> Miami, Florida 33131
> Phone Number: (305) 377-3770
> Fax Number (305) 377-0080
>
> (Attorneys for the Defendants)

LEWIS BOSSING (Special Bar No. A5500574)
Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66738
Washington, DC 20035-6738
(202) 514-5510

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-0244-CIV-KING/O'SULLIVAN

UNITED STATES OF AMERICA,

     Plaintiff

v.

NORWEGIAN CRUISE LINES, INC.,

     and

NORWEGIAN CRUISE LINES LIMITED,

     Defendants.

_____/

## UNITED STATES' MOTION FOR A PROTECTIVE ORDER QUASHING DEFENDANTS' SUBPOENA

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-0244 CIV-KING/O'SULLIVAN

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

NORWEGIAN CRUISE LINES, INC.,
a Florida Corporation, and NORWEGIAN
CRUISE LINE LIMITED, a Bermuda
Corporation,

       Defendants.

_____/

## NOTICE OF TAKING DEPOSITION

YOU ARE HEREBY notified that on the following date and time and at the office listed

below, the Defendants in the above-styled cause pursuant to Rule 30(b)(6) of the Federal Rules

of Civil Procedure, will take the deposition, by oral examination, for the purposes of discovery

and for use as evidence in the said cause, or both, of:

| | | |
|---|---|---|
| *NAME* | : | **Plaintiff, United States of America, The person with the most knowledge regarding the topics referenced below** |
| *DATE* | : | **Monday, August 6, 2001** |
| *TIME* | : | **10:00 a.m.** |
| *PLACE* | : | **Mase & Gassenheimer, P.A. 1001 Brickell Bay Drive Suite 1200 Miami, FL  33131** |

This deposition will be taken before an officer authorized to administer oaths by the laws

CASE NO. 01-0244 CIV-KING/O'SULLIVAN

of the State of Florida and a person who is neither a relative nor employee of such attorney of record, and who is not financially interested in the action.

This deposition shall be taken pursuant to the Federal Rules of Civil Procedure. The oral examination will continue from hour to hour and from day to day until completed.

The deposition will include inquiry into the following topics:

1.    Suits filed by the Department of Justice against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present, including the number of suits filed.

2.    The final result of all lawsuits filed by the Department of Justice against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present.

3.    Congress' direction to the Attorney General and the Department of Transportation to issue regulations on or before July 26, 1991 to effectuate the Americans with Disabilities Act provisions.

4.    Guidance as to what would constitute a reasonable modification of the policies, practices, or procedures set forth in the Complaint. See Exhibit "A".

5.    Guidance as to what would constitute the appropriate criteria for screening out potential passengers on foreign flagged cruise ships without violating the Americans with Disabilities Act necessary for a foreign flagged cruise ship to provide the goods, services, facilities, privileges, advantages, or accommodations being offered. *See* 42 U.S.C.A. §12182(b)(2)(A)(I); 28 C.F.R. §36.301(a); 28 C.F.R. Pt. 36, App. B, at 623.

6.    Guidance as to how a foreign flagged cruise ship is required to modify its policies, practices and procedures to avoid discrimination under the Americans with Disabilities Act.

7.    Guidance as to the extent of the individualized inquiry necessary to determine the reasonableness of modifications to cruise ship policies, practices and procedures set forth in the Complaint. See Exhibit "A."

8.    Guidance as to whether an individualized assessment must be made as to whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

9.    Guidance as to the extent of any individualized assessment that must be made to determine whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

Mase & Gassenheimer, P.A.
1001 Brickell Bay Drive, Suite 1200, Miami, Florida 33131 (305) 377-3770

10.    Guidance as to whether a private entity that does not own, lease, lease to or operate a place of public accommodation may properly be sued for discrimination under the Americans with Disabilities Act.

11.    Guidance as to how the owners of the foreign flagged cruise ship may reconcile the laws of its home state, international law applicable to cruise ships and the requirements imposed by the Americans with Disabilities Act.

12.    The Title III regulations for which the Department of Justice is charged with responsibility under the Americans with Disabilities Act.

13.    Congress' direction to the Attorney General and the Department of Transportation to issue regulations on or before July 26, 1991 to effectuate the Americans with Disabilities Act provisions.

14.    Regulations as to how a foreign flagged cruise ship is required to modify its policies, practices and procedures to avoid discrimination under the Americans with Disabilities Act.

15.    Regulations as to the extent of the individualized inquiry necessary to determine the reasonableness of  modifications to foreign flagged cruise ship policies, practices and procedures.

16.    Guidance as to whether an individualized assessment must be made as to whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

17.    Guidance as to the extent of any individualized assessment that must be made to determine whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

18.    Guidance as to how the owners of a foreign flagged cruise ship may reconcile the laws of its home state, international law applicable to cruise ships and the requirements imposed by the Americans with Disabilities Act.

19.    The Title III regulations for which the Department of Justice is charged with responsibility under the Americans with Disabilities Act.

CASE NO. 01-0244 CIV-KING/O'SULLIVAN

**In accordance with the Americans with Disabilities Act of 1990 (ADA), disabled persons who, because of their disabilities need special accommodation to participate in this proceeding should contact the ada coordinator at (305) 377-3770 or telephone voice/tdd 1-800-955-8771 not later than five business days prior to such proceeding.**

Respectfully submitted,

MASE & GASSENHEIMER, P.A.
1200 Brickell Bay Office Tower
1001 Brickell Bay Drive
Miami, Florida 33131
Telephone: (305) 377-3770
Facsimile: (305) 377-0080

By: _____
CURTIS J. MASE
Florida Bar. No. 478083
RICHARD D. LARA
Florida Bar No. 987492

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via fax and U.S. Mail on this 25 day of July, 2001 to: **Veronica Harrell-James**, Assistant U.S. Attorney, 99 N.E. 4th Street, 6th Floor, Miami, Florida 33132, and to **Daniel I. Werfel**, Attorneys, Disability Rights Section, Civil Rights Division, U.S. Department of Justice, P.O. Box 66738, Washington, D.C. 20035-6738.

_____
RICHARD D. LARA

15726/89351v1

JUL-25-2001  16:52                    3053770080                    97%                    P.05

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) CIVIL NO. 01 - 0244
)
NORWEGIAN CRUISE LINES, INC., )
a Florida Corporation, and NORWEGIAN )
CRUISE LINE LIMITED, a Bermuda )
Corporation. )
) CIV - KING
Defendants. )

MAGISTRATE JUDG
O SULLIVAN

$\partial/19$

## COMPLAINT

The United States of America alleges:

1.      This action is brought by the United States pursuant to title III of the Americans

with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12181 - 12189, against Norwegian Cruise

Line Limited and Norwegian Cruise Lines, Inc. (collectively, "NCL" or "Defendants"). NCL

owns and operates a cruise line business, offering cruise trips in the United States and throughout

the world.

### Jurisdiction and Venue

2.      This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B), and

28 U.S.C. §§ 1331 and 1345. This Court has authority to grant equitable relief, monetary

damages and civil penalties under 42 U.S.C. § 12188(b)(2) and 28 U.S.C. § 2201 and 2202.

3.      Pursuant to 28 U.S.C. § 1391, venue is proper in the Southern District of Florida.

1

EXHIBIT
"A"

Parties

4.      The Attorney General is authorized under title III of the ADA to bring suit on behalf of the United States if she has reasonable cause to believe that an entity is engaged in a pattern or practice of discrimination under title III, or that persons with disabilities have been discriminated against under title III and this discrimination raises issues of general public importance.  42 U.S.C. § 12188(b)(1)(B).

5.      Norwegian Cruise Line Limited is a Bermuda corporation with its principal place of business in Miami, Florida.

6.      Norwegian Cruise Line Limited is a private entity within the meaning of Sections 301 and 304 of the ADA, 42 U.S.C. §§ 12181 and 12184, and, thus, subject to the requirements of title III of the ADA, 42 U.S.C. §§ 12181 - 12189.

7.      Norwegian Cruise Lines, Inc. is a Florida corporation with its principal place of business in Miami, Florida.

8.      Norwegian Cruise Lines, Inc. is a private entity within the meaning of Sections 301 and 304 of the ADA, 42 U.S.C. §§ 12181 and 12184, and, thus, subject to the dictates of title III of the ADA, 42 U.S.C. §§ 12181 - 12189.

General Allegations

9.      Upon information and belief, NCL owns and operates several cruise ships, each of which can accommodate over 1500 passengers on a given cruise.  NCL offers hundreds of cruise trips that originate and terminate in United States ports.

10.     Each cruise ship NCL owns and operates contains, inter alia, places of lodging, restaurants, bars, theaters, auditoriums, retail stores, gift shops, and recreational facilities.

2

11.     NCL's cruise ships provide the general public with transportation services on a regular and continuing basis.

12.     NCL is a private entity that owns, leases or operates places of public accommodation and is, therefore, a public accommodation within the meaning of title III of the ADA, 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104.

13.     NCL is a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce, and therefore is covered by title III of the ADA as a specified public transportation service, 42 U.S.C. § 12184(a), 42 U.S.C. 12181(10) and 28 C.F.R. § 36.310.

Count I
Violations of Title III of the ADA
With Regard to Complainant, Stephen Gomes

14.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

15.     Stephen Gomes is blind and has been since birth. He is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

16.     In April 1999, Mr. Gomes booked a cruise on the NCL cruise ship, "Norwegian Sea." The Norwegian Sea was scheduled to depart from Houston, Texas, on August 22, 1999, and spend approximately seven days in the Caribbean sea before returning to Houston. Mr. Gomes booked the cruise through his travel agent, and paid NCL $1,216.

17.     NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking. Pursuant to this requirement, at the time of booking, Mr. Gomes, through his travel agent, informed NCL that he was blind.

3

18.    In May of 1999, NCL informed Mr. Gomes, through his travel agent, that he was required to provide NCL with a doctor's note certifying that he was "fit to travel."

19.    Mr. Gomes, believing NCL's policy was discriminatory, refused to provide a doctor's note to NCL. On June 11, 1999, NCL informed Mr. Gomes, through his travel agent, that he would be permitted to travel on the Norwegian Sea, as scheduled, without a doctor's note.

20.    On August 22, 1999, Mr. Gomes flew from his home in Denver, Colorado to Houston, Texas and arrived at the boarding area for passengers of the Norwegian Sea. NCL staff informed Mr. Gomes that he would need to be examined by the ship's physician before he would be permitted to board.

21.    After several hours of waiting, Mr. Gomes was approached by NCL representatives, including the ship's physician, who informed him that he would not be permitted to board the ship because he is blind and was traveling alone.

22.    As a direct and proximate result of NCL's decision to deny Mr. Gomes access to the Norwegian Sea due to his vision impairment, he was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Sea.

23.    NCL's actions caused Mr. Gomes to suffer financial harm, humiliation, emotional distress, frustration, and anxiety.

24.    Mr. Gomes would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

25.    NCL's conduct described in paragraphs 17 through 24 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

            a.    Discriminates against individuals on the basis of disability in the full and
                  equal enjoyment of the goods, services, facilities, privileges, advantages or

4

accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

b.  Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.  Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.  Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

e.  Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f.  Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

5

26. NCL's treatment of Mr. Gomes constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

### Count II
### Violations of Title III of the ADA
### With Regard to Complainant, Joy Stigile

27. The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

28. Joy Stigile is blind. She is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

29. Joy Stigile married Robert Stigile on June 18, 2000.

30. In early March of 2000, the Stigiles booked and paid a deposit for a cruise for their honeymoon on the NCL cruise ship, "Norwegian Wind." The Norwegian Wind was scheduled to depart on June 19, 2000, and travel throughout Alaska.

31. NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking. Pursuant to this requirement, at the time of booking, Joy Stigile informed NCL that she is blind.

32. On or about March 10, 2000, NCL informed Joy Stigile that she would not be permitted to board the Norwegian Wind unless she signed a form. The form stated, in part, that (i) the cruise presents "inherent risks" for any passenger with vision impairments; (ii) she must assume all such risks; (iii) she should consult with her physician regarding these risks; and, (iv) she should obtain ship travel insurance.

33. On information and belief, NCL sends the form referenced in paragraph 32 to all prospective passengers who have identified themselves to NCL as people with vision

6

impairments, but not to other passengers.

34.     Joy Stigile refused on principle to sign the form referenced in paragraph 32. After extended negotiations between NCL and Joy Stigile, NCL informed her on June 9, 2000 that she would be permitted to travel on the Norwegian Wind, as scheduled, without signing any release forms. However, since it was only nine days before the wedding, she and Robert Stigile had made other honeymoon arrangements fearing that they would not be permitted to board the cruise ship. She therefore informed NCL that she would not travel on that Norwegian Wind cruise.

35.     The Stigiles requested that their $500 deposit be refunded, but NCL refused.

36.     As a direct and proximate result of NCL's decision to impose extra conditions on Joy Stigile due to her vision impairment, she was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Wind.

37.     NCL's actions caused Joy Stigile to suffer financial harm, emotional distress, frustration, and anxiety.

38.     Joy Stigile would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

39.     NCL's conduct described in paragraphs 31 through 36 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

    a.     Discriminates against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

7

b.    Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.    Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.    Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

e.    Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f.    Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

40.    NCL's treatment of Joy Stigile constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

8

Count III
Violations of Title III of the ADA
With Regard to Complainant, Robert Stigile

41.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

42.     Robert Stigile is blind. He is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

43.     Robert Stigile married Joy Stigile on June 18, 2000.

44.     In early March of 2000, the Stigiles booked and paid a deposit for a cruise for their honeymoon on the NCL cruise ship, "Norwegian Wind." The Norwegian Wind was scheduled to depart on June 19, 2000, and travel throughout Alaska.

45.     NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking. Pursuant to this requirement, at the time of booking, Robert Stigile informed NCL that he is blind. He also informed NCL that he intended to travel with his service animal.

46.     On or about March 10, 2000, NCL informed Robert Stigile that he would not be permitted to board the Norwegian Wind unless he signed a form. The form stated, in part, that (i) the cruise presents "inherent risks" for any passenger with vision impairments; (ii) he must assume all such risks; (iii) he should consult with his physician regarding these risks; and, (iv) he should obtain ship travel insurance.

47.     On information and belief, NCL sends the form referenced in paragraph 46 to all prospective passengers who have identified themselves to NCL as people with vision impairments, but not to other passengers.

48.     On or about March 10, 2000, NCL asked Robert Stigile to sign an additional release dealing more specifically with his service animal. The form stated, in part, that he should

9

travel "with an individual in the same cabin who is not sight-impaired," a person who would be "able to provide assistance in the unlikely event of an emergency aboard the ship."

49.     On information and belief, NCL sends the release form referenced in paragraph 48 to all prospective passengers who have identified themselves to NCL as people with vision impairments and who inform NCL that they intend to bring a service animal aboard the ship.

50.     Robert Stigile refused on principle to sign the forms referenced in paragraphs 46 and 48. After extended negotiations between NCL and Robert Stigile, NCL informed him on June 9, 2000 that he would be permitted to travel on the Norwegian Wind, as scheduled, without signing any release forms. However, since it was only nine days before the wedding, he and Joy Stigile had made other honeymoon arrangements fearing that they would not be permitted to board the cruise ship. He therefore informed NCL that he would not travel on that Norwegian Wind cruise.

51.     The Stigiles requested that their $500 deposit be refunded, but NCL refused.

52.     As a direct and proximate result of NCL's decision to impose extra conditions on Robert Stigile due to his vision impairments, he was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Wind.

53.     NCL's actions caused Robert Stigile to suffer financial harm, emotional distress, frustration, and anxiety.

54.     Robert Stigile would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

55.     NCL's conduct described in paragraphs 45 through 52 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

          a.     Discriminates against individuals on the basis of disability in the full and

10

equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

b.   Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.   Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.   Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

e.   Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f.   Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

11

56.     NCL's treatment of Robert Stigile constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

Count IV
A Pattern or Practice of Discrimination
With Regard to the Complainants and Other Individuals with Disabilities in Violation of
Title III of the ADA

57.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

58.     NCL's general policy and practice has been to impose requirements on prospective passengers with disabilities that are not imposed on prospective passengers without disabilities. NCL's advertising brochure states, "All passengers with a disability must be self-sufficient and should travel with a passenger who will provide any assistance needed during the cruise and in the event of an emergency." In addition, NCL's "Passenger Ticket Contract," sent to passengers prior to the scheduled cruise, states, in part, that "a medical certificate certifying fitness for travel may be required," that for "reasons of passenger safety and well-being, Carrier may require such persons to be accompanied by, and share the same cabin with, an adult who is not physically impaired as aforesaid," and that NCL "reserves the right to refuse or revoke passage to anyone" who is, in its sole judgment, "unfit for travel."

59.     As a direct and proximate result of NCL's policies and practices discriminating against people with vision impairments, referenced in paragraph 58 and elsewhere in this Complaint, Stephen Gomes, Joy Stigile, Robert Stigile, and, upon information and belief, other individuals with vision impairments have been denied equal access to, and equal enjoyment of, the benefits and services of, NCL's cruise ships.

12

60. NCL's actions have caused Mr. Gomes, Joy Stigile, Robert Stigile, and, upon information and belief, other individuals with vision impairments to suffer financial harm, humiliation, emotional distress, frustration, and anxiety.

61. NCL's conduct generally described in paragraphs 58 through 59 and more specifically described elsewhere in this complaint constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

a.   Discriminates against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

b.   Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.   Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.   Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

13

e.   Fails to make reasonable modifications in policies, practices, or

procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and

12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f.   Provides an individual or class of individuals on the basis of a disability or

disabilities with goods, services, facilities, privileges, advantages or

accommodations that are different from those provided to other

individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R.

§ 36.202(c).

62.   NCL's general policy and practice imposing requirements on prospective

passengers with disabilities that are not imposed on prospective passengers without disabilities,

and its treatment of Mr. Gomes, Joy Stigile, Robert Stigile, and other individuals with

disabilities, constitutes (a) a pattern or practice of discrimination within the meaning of 42

U.S.C. §12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a);  and (b) discrimination that raises an issue

of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R.

§ 36.503(b).

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court:

A.   Declare that NCL's discriminatory practices as set forth above violate the

Americans with Disabilities Act, 42 U.S.C. §§ 12101 - 12189, and the U.S. Department of

Justice's implementing regulation, 28 C.F.R. Part 36;

B.   Enjoin NCL, its officers, agents and employees, and all other persons in active

concert or participation with any of them, from discriminating on the basis of disability against

any individual seeking to participate in a cruise on an NCL cruise ship;

14

C.     Order NCL to institute and implement policies and procedures that will eliminate discrimination on the basis of disability.

D.     Award compensatory damages against NCL in an amount to be determined at trial in favor of Stephen Gomes, Joy Stigile, Robert Stigile and all other individuals with disabilities who have been injured as a direct and proximate result of NCL's violations of Title III of the ADA;

E.     Assess a civil penalty against the Defendants in the amount authorized by 42 U.S.C. § 12188(b)(2)(C) and 28 C.F.R. § 36.504 to vindicate the public interest; and

F.     Order such other appropriate relief as the interests of justice may require.

Respectfully submitted,

JANET RENO
Attorney General
of the United States

BARRY SABIN
ACTING U.S. ATTORNEY
Southern District of Florida

VERONICA HARRELL-JAMES
Assistant United States Attorney
99 N.E. 4th Street, 6th Floor
Miami, Florida 33132
(305) 961-9327
(305) 530-7976 (facsimile)
Fla. Bar No. 644791

BILL LANN LEE
Assistant Attorney General
Civil Rights Division

JOHN L. WODATCH, Chief
L. IRENE BOWEN, Deputy Chief

DANIEL W. SUTHERLAND
DANIEL I. WERFEL
Attorneys, Disability Rights Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66738
Washington, D.C. 20035-6738
(202) 616-5540, 5510
(202) 307-1197 (facsimile)

January ___, 2001

15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-0244-CIV-KING/O'SULLIVAN

UNITED STATES OF AMERICA,

     Plaintiff

v.

NORWEGIAN CRUISE LINES, INC.,

     and

NORWEGIAN CRUISE LINES LIMITED,

     Defendants.

_____/

## UNITED STATES' MOTION FOR A PROTECTIVE ORDER QUASHING DEFENDANTS' SUBPOENA

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  01-0244 CIV-KING/O'SULLIVAN

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

NORWEGIAN CRUISE LINES, INC.,
a Florida Corporation, and NORWEGIAN
CRUISE LINE LIMITED, a Bermuda
Corporation,

       Defendants.

_____/

## NOTICE OF TAKING DEPOSITION DUCES TECUM

YOU ARE HEREBY notified that on the following date and time and at the office listed

below, the Defendants in the above-styled cause pursuant to Rule 30(b)(6) of the Federal Rules

of Civil Procedure, will take the deposition, by oral examination, for the purposes of discovery

and for use as evidence in the said cause, or both, of:

| | | |
|---|---|---|
| *NAME* | : | **The Department of Justice The person with the most knowledge regarding the topics referenced below** |
| *DATE* | : | **Monday, August 6, 2001** |
| *TIME* | : | **10:00 a.m.** |
| *PLACE* | : | **Department of Justice Office of Daniel I. Werfel 1100 Vermont Avenue, N.W. Washington, D.C. 20035-6738** |

Said deposition will be taken before an officer authorized to administer oaths by the laws

of the District of Columbia and a person who is neither a relative nor employee of such attorney of record, and who is not financially interested in the action.

This deposition shall be taken pursuant to the Federal Rules of Civil Procedure.  The oral examination will continue from hour to hour and from day to day until completed. **You are to bring with you the documents listed on the attached Exhibit "A".**

The deposition will include inquiry into the following topics:

1.      Suits filed by the Department of Justice against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present.

2.      The final result of all suits filed by the Department of Justice against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present.

3.      Congress' direction to the Attorney General and the Department of Transportation to issue regulations on or before July 26, 1991 to effectuate the Americans with Disabilities Act provisions.

4.      Guidance as to what would constitute a reasonable modification of the policies, practices, or procedures set forth in the Complaint.  See Exhibit "B".

5.      Guidance as to what would constitute the appropriate criteria for screening out potential passengers on foreign flagged cruise ships without violating the Americans with Disabilities Act necessary for a foreign flagged cruise ship to provide the goods, services, facilities, privileges, advantages, or accommodations being offered.   *See* 42 U.S.C.A. §12182(b)(2)(A)(I); 28 C.F.R. §36.301(a); 28 C.F.R. Pt. 36, App. B, at 623.

6.      Guidance as to how a foreign flagged cruise ship is required to modify its policies, practices and procedures to avoid discrimination under the Americans with Disabilities Act.

7.      Guidance as to the extent of the individualized inquiry necessary to determine the reasonableness of modifications to cruise ship policies, practices and procedures set forth in the Complaint.  See Exhibit "B."

8.      Guidance as to whether an individualized assessment must be made as to whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

9.      Guidance as to the extent of any individualized assessment that must be made to

determine whether an individual with a disability constitutes a direct threat to himself/herself or to others on a foreign flagged cruise ship.

10.    Guidance as to whether a private entity that does not own, lease, lease to or operate a place of public accommodation may properly be sued for discrimination under the Americans with Disabilities Act.

11.    Guidance as to how the owners of the foreign flagged cruise ship may reconcile the laws of its home state, international law applicable to cruise ships and the requirements imposed by the Americans with Disabilities Act.

12.    The Title III regulations for which the Department of Justice is charged with responsibility under the Americans with Disabilities Act.

**In accordance with the Americans with Disabilities Act of 1990 (ADA), disabled persons who, because of their disabilities need special accommodation to participate in this proceeding should contact the ada coordinator at (305) 377-3770 or telephone voice/tdd 1-800-955-8771 not later than five business days prior to such proceeding.**

Respectfully submitted,

MASE & GASSENHEIMER, P.A.
1200 Brickell Bay Office Tower
1001 Brickell Bay Drive
Miami, Florida 33131
Telephone: (305) 377-3770

By: _____
CURTIS J. MASE
Florida Bar. No. 478083
CATHERINE J. MACIVOR
Florida Bar No. 932711

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via fax and U.S. Mail on this ____ day of July, 2001 to: **Veronica Harrell-James**, Assistant U.S.

CASE NO. 01-0244-CIV-MORENO/O'SULLIVAN

Attorney, 99 N.E. 4th Street, 6th Floor, Miami, Florida 33132, and to **Daniel I. Werfel**,

Attorneys, Disability Rights Section, Civil Rights Division, U.S. Department of Justice, P.O.

Box 66738, Washington, D.C. 20035-6738.

CATHERINE J. MACIVOR

15726/88918v2

CASE NO. 01-0244 CIV-KING/O'SULLIVAN

## EXHIBIT "A"
## DUCES TECUM

1.     All complaints filed against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present.

2.     All final judgments, Consent decrees or other documents filed with the Court indicating the final result of all suits filed against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present.

3.     All documents relating to Congress' direction to the Attorney General and the Department of Transportation to issue regulations on or before July 26, 1991 to effectuate the Americans with Disabilities Act provisions.

4.     All documents relating to any guidance provided by the Department of Justice as to what would constitute the necessary criteria for screening out potential passengers on foreign flagged cruise ships. *See* 28 C.F.R. Pt. 36, App. B, at 623.

5.     All documents relating to any guidance provided by the Department of Justice as to how a foreign flagged cruise ship is required to modify its policies, practices and procedures to avoid discrimination under the Americans with Disabilities Act.

6.     All documents relating to any guidance as to the extent of the individualized inquiry necessary to determine the reasonableness of modifications to cruise ship policies, practices and procedures.

7.     All documents relating to any guidance as to whether an individualized assessment must be made as to whether an individual with a disability constitutes a direct threat to himself/herself or to others.

Mase & Gassenheimer, P.A.
1001 Brickell Bay Drive, Suite 1200, Miami, Florida 33131 (305) 377-3770

Issued by the

# United States District Court

SOUTHERN   DISTRICT OF   FLORIDA

UNITED STATES OF AMERICA

**SUBPOENA IN A CIVIL CASE**

v.

**CASE NUMBER:  01-0244 CIV-KING/O'SULLIVAN**

NORWEGIAN CRUISE LINES, INC., a Florida
Corporation, and NORWEGIAN CRUISE LINE
LIMITED, a Bermuda Corporation

TO:    **Department of Justice**
       **Office of Daniel I. Werfel**
       **1100 Vermont Avenue, N.W.**
       **Washington, D.C. 20035-6738**

, YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

XX, YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Department of Justice** **Office of Daniel I. Werfel** **1100 Vermont Avenue, N.W.** **Washington, D.C. 20035-6738** | **August 6, 2001 at 10:00 a.m.** |

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| **SEE ATTACHED EXHIBIT "A"** | **August 6, 2001 at 10:00 a.m.** |

, YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* for : | 7/19/01 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**CATHERINE J. MACIVOR, ESQ.**
**MASE & GASSENHEIMER, P.A.**
**1001 Brickell Bay Drive, Suite 1200**
**Miami, Florida 33131**

**TEL.: (305) 377-3770**
**FAX:  (305) 377-0080**

See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

If action is pending in district other than district of issuance, state district under case number.

## EXHIBIT "A"
## DUCES TECUM

1.    All complaints filed against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present

2.    All final judgments, Consent decrees or other documents filed with the Court indicating the final result of all suits filed against cruise lines or owners of cruise ships for violations of the Americans with Disabilities Act from January 1, 1992 to the present.

3.    All documents relating to Congress' direction to the Attorney General and the Department of Transportation to issue regulations on or before July 26, 1991 to effectuate the Americans with Disabilities Act provisions.

4.    All documents relating to any guidance provided by the Department of Justice as to what would constitute the necessary criteria for screening out potential passengers on foreign flagged cruise ships. *See* 28 C.F.R. Pt. 36. App. B, at 623.

5.    All documents relating to any guidance provided by the Department of Justice as to how a foreign flagged cruise ship is required to modify its policies, practices and procedures to avoid discrimination under the Americans with Disabilities Act.

6.    All documents relating to any guidance as to the extent of the individualized inquiry necessary to determine the reasonableness of modifications to cruise ship policies, practices and procedures.

7.    All documents relating to any guidance as to whether an individualized assessment must be made as to whether an individual with a disability constitutes a direct threat to himself/herself or to others.

15726/88942

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        CIVIL NO. 01 - 0244
                                         )
NORWEGIAN CRUISE LINES, INC.,            )
a Florida Corporation, and NORWEGIAN     )        CIV - KING
CRUISE LINE LIMITED, a Bermuda           )
Corporation.                             )
                                         )        MAGISTRATE JUDGE
        Defendants.                      )        O'SULLIVAN

## COMPLAINT

2/19

The United States of America alleges:

1.     This action is brought by the United States pursuant to title III of the Americans
with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12181 - 12189, against Norwegian Cruise
Line Limited and Norwegian Cruise Lines, Inc. (collectively, "NCL" or "Defendants"). NCL
owns and operates a cruise line business, offering cruise trips in the United States and throughout
the world.

### Jurisdiction and Venue

2.     This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B), and
28 U.S.C. §§ 1331 and 1345. This Court has authority to grant equitable relief, monetary
damages and civil penalties under 42 U.S.C. § 12188(b)(2) and 28 U.S.C. § 2201 and 2202.

3.     Pursuant to 28 U.S.C. § 1391, venue is proper in the Southern District of Florida.

1



EXHIBIT

"B"

Parties

4.     The Attorney General is authorized under title III of the ADA to bring suit on behalf of the United States if she has reasonable cause to believe that an entity is engaged in a pattern or practice of discrimination under title III, or that persons with disabilities have been discriminated against under title III and this discrimination raises issues of general public importance.  42 U.S.C. § 12188(b)(1)(B).

5.     Norwegian Cruise Line Limited is a Bermuda corporation with its principal place of business in Miami, Florida.

6.     Norwegian Cruise Line Limited is a private entity within the meaning of Sections 301 and 304 of the ADA, 42 U.S.C. §§ 12181 and 12184, and, thus, subject to the requirements of title III of the ADA, 42 U.S.C. §§ 12181 - 12189.

7.     Norwegian Cruise Lines, Inc. is a Florida corporation with its principal place of business in Miami, Florida.

8.     Norwegian Cruise Lines, Inc. is a private entity within the meaning of Sections 301 and 304 of the ADA, 42 U.S.C. §§ 12181 and 12184, and, thus, subject to the dictates of title III of the ADA, 42 U.S.C. §§ 12181 - 12189.

General Allegations

9.     Upon information and belief, NCL owns and operates several cruise ships, each of which can accommodate over 1500 passengers on a given cruise.  NCL offers hundreds of cruise trips that originate and terminate in United States ports.

10.     Each cruise ship NCL owns and operates contains, inter alia, places of lodging, restaurants, bars, theaters, auditoriums, retail stores, gift shops, and recreational facilities.

11.     NCL's cruise ships provide the general public with transportation services on a regular and continuing basis.

12.     NCL is a private entity that owns, leases or operates places of public accommodation and is, therefore, a public accommodation within the meaning of title III of the ADA, 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104.

13.     NCL is a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce, and therefore is covered by title III of the ADA as a specified public transportation service, 42 U.S.C. § 12184(a), 42 U.S.C. 12181(10) and 28 C.F.R. § 36.310.

Count I
Violations of Title III of the ADA
With Regard to Complainant, Stephen Gomes

14.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

15.     Stephen Gomes is blind and has been since birth. He is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

16.     In April 1999, Mr. Gomes booked a cruise on the NCL cruise ship, "Norwegian Sea." The Norwegian Sea was scheduled to depart from Houston, Texas, on August 22, 1999, and spend approximately seven days in the Caribbean sea before returning to Houston. Mr. Gomes booked the cruise through his travel agent, and paid NCL $1,216.

17.     NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking. Pursuant to this requirement, at the time of booking, Mr. Gomes, through his travel agent, informed NCL that he was blind.

18.    In May of 1999, NCL informed Mr. Gomes, through his travel agent, that he was required to provide NCL with a doctor's note certifying that he was "fit to travel."

19.    Mr. Gomes, believing NCL's policy was discriminatory, refused to provide a doctor's note to NCL. On June 11, 1999, NCL informed Mr. Gomes, through his travel agent, that he would be permitted to travel on the Norwegian Sea, as scheduled, without a doctor's note.

20.    On August 22, 1999, Mr. Gomes flew from his home in Denver, Colorado to Houston, Texas and arrived at the boarding area for passengers of the Norwegian Sea. NCL staff informed Mr. Gomes that he would need to be examined by the ship's physician before he would be permitted to board.

21.    After several hours of waiting, Mr. Gomes was approached by NCL representatives, including the ship's physician, who informed him that he would not be permitted to board the ship because he is blind and was traveling alone.

22.    As a direct and proximate result of NCL's decision to deny Mr. Gomes access to the Norwegian Sea due to his vision impairment, he was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Sea.

23.    NCL's actions caused Mr. Gomes to suffer financial harm, humiliation, emotional distress, frustration, and anxiety.

24.    Mr. Gomes would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

25.    NCL's conduct described in paragraphs 17 through 24 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

    a.    Discriminates against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or

accommodations of a place of public accommodation, in violation of 42
U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310.

b.      Imposes or applies eligibility criteria that screen out or tend to screen out
individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i)
and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.      Subjects an individual or class of individuals on the basis of a disability or
disabilities to a denial of the equal opportunity to participate in or equal
benefit from the goods, services, facilities, privileges, advantages, or
accommodations of a place of public accommodation, in violation of 42
U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.      Affords an individual or class of individuals on the basis of a disability or
disabilities with an opportunity to participate in or benefit from goods,
services, facilities, privileges, advantages or accommodations in a manner
that is not equal to that afforded to others, in violation of 42 U.S.C.
§§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

e.      Fails to make reasonable modifications in policies, practices, or
procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and
12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f.      Provides an individual or class of individuals on the basis of a disability or
disabilities with goods, services, facilities, privileges, advantages or
accommodations that are different from those provided to other
individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R.
§ 36.202(c).

26      NCL's treatment of Mr. Gomes constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

Count II
Violations of Title III of the ADA
With Regard to Complainant, Joy Stigile

27.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

28.     Joy Stigile is blind.  She is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

29.     Joy Stigile married Robert Stigile on June 18, 2000.

30.     In early March of 2000, the Stigiles booked and paid a deposit for a cruise for their honeymoon on the NCL cruise ship, "Norwegian Wind."  The Norwegian Wind was scheduled to depart on June 19, 2000, and travel throughout Alaska.

31.     NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking.  Pursuant to this requirement, at the time of booking, Joy Stigile informed NCL that she is blind.

32.     On or about March 10, 2000, NCL informed Joy Stigile that she would not be permitted to board the Norwegian Wind unless she signed a form.  The form stated, in part, that (i) the cruise presents "inherent risks" for any passenger with vision impairments; (ii) she must assume all such risks; (iii) she should consult with her physician regarding these risks; and, (iv) she should obtain ship travel insurance.

33.     On information and belief, NCL sends the form referenced in paragraph 32 to all prospective passengers who have identified themselves to NCL as people with vision

impairments, but not to other passengers.

34.      Joy Stigile refused on principle to sign the form referenced in paragraph 32. After extended negotiations between NCL and Joy Stigile, NCL informed her on June 9, 2000 that she would be permitted to travel on the Norwegian Wind, as scheduled, without signing any release forms. However, since it was only nine days before the wedding, she and Robert Stigile had made other honeymoon arrangements fearing that they would not be permitted to board the cruise ship. She therefore informed NCL that she would not travel on that Norwegian Wind cruise.

35.      The Stigiles requested that their $500 deposit be refunded, but NCL refused.

36.      As a direct and proximate result of NCL's decision to impose extra conditions on Joy Stigile due to her vision impairment, she was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Wind.

37.      NCL's actions caused Joy Stigile to suffer financial harm, emotional distress, frustration, and anxiety.

38.      Joy Stigile would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

39.      NCL's conduct described in paragraphs 31 through 36 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

> a.      Discriminates against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

b. Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c. Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d. Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

e. Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f. Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

40. NCL's treatment of Joy Stigile constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

Count III
Violations of Title III of the ADA
With Regard to Complainant, Robert Stigile

41.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

42.     Robert Stigile is blind. He is an individual with a disability within the meaning of 42 U.S.C. § 12102, and its implementing regulation, 28 C.F.R. § 36.104.

43.     Robert Stigile married Joy Stigile on June 18, 2000.

44.     In early March of 2000, the Stigiles booked and paid a deposit for a cruise for their honeymoon on the NCL cruise ship, "Norwegian Wind." The Norwegian Wind was scheduled to depart on June 19, 2000, and travel throughout Alaska.

45.     NCL maintains a policy of requiring all passengers to report any medical condition or physical disability to NCL at the time of booking. Pursuant to this requirement, at the time of booking, Robert Stigile informed NCL that he is blind. He also informed NCL that he intended to travel with his service animal.

46.     On or about March 10, 2000, NCL informed Robert Stigile that he would not be permitted to board the Norwegian Wind unless he signed a form. The form stated, in part, that (i) the cruise presents "inherent risks" for any passenger with vision impairments; (ii) he must assume all such risks; (iii) he should consult with his physician regarding these risks; and, (iv) he should obtain ship travel insurance.

47.     On information and belief, NCL sends the form referenced in paragraph 46 to all prospective passengers who have identified themselves to NCL as people with vision impairments, but not to other passengers.

48.     On or about March 10, 2000, NCL asked Robert Stigile to sign an additional release dealing more specifically with his service animal. The form stated, in part, that he should

travel "with an individual in the same cabin who is not sight-impaired," a person who would be "able to provide assistance in the unlikely event of an emergency aboard the ship."

49.     On information and belief, NCL sends the release form referenced in paragraph 48 to all prospective passengers who have identified themselves to NCL as people with vision impairments and who inform NCL that they intend to bring a service animal aboard the ship.

50.     Robert Stigile refused on principle to sign the forms referenced in paragraphs 46 and 48. After extended negotiations between NCL and Robert Stigile, NCL informed him on June 9, 2000 that he would be permitted to travel on the Norwegian Wind, as scheduled, without signing any release forms. However, since it was only nine days before the wedding, he and Joy Stigile had made other honeymoon arrangements fearing that they would not be permitted to board the cruise ship. He therefore informed NCL that he would not travel on that Norwegian Wind cruise.

51.     The Stigiles requested that their $500 deposit be refunded, but NCL refused.

52.     As a direct and proximate result of NCL's decision to impose extra conditions on Robert Stigile due to his vision impairments, he was denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ship, the Norwegian Wind.

53.     NCL's actions caused Robert Stigile to suffer financial harm, emotional distress, frustration, and anxiety.

54.     Robert Stigile would like to travel on another NCL cruise in the future, if the unlawful policies and practices described in this Complaint are remedied.

55.     NCL's conduct described in paragraphs 45 through 52 constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

    a.     Discriminates against individuals on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

b.    Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.    Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.    Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

e.    Fails to make reasonable modifications in policies, practices, or procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

f.    Provides an individual or class of individuals on the basis of a disability or disabilities with goods, services, facilities, privileges, advantages or accommodations that are different from those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R. § 36.202(c).

56.   NCL's treatment of Robert Stigile constitutes discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R § 36.503(b).


Count IV
A Pattern or Practice of Discrimination
With Regard to the Complainants and Other Individuals with Disabilities in Violation of
Title III of the ADA

57.   The United States incorporates by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

58.   NCL's general policy and practice has been to impose requirements on prospective passengers with disabilities that are not imposed on prospective passengers without disabilities. NCL's advertising brochure states, "All passengers with a disability must be self-sufficient and should travel with a passenger who will provide any assistance needed during the cruise and in the event of an emergency." In addition, NCL's "Passenger Ticket Contract," sent to passengers prior to the scheduled cruise, states, in part, that "a medical certificate certifying fitness for travel may be required," that for "reasons of passenger safety and well-being, Carrier may require such persons to be accompanied by, and share the same cabin with, an adult who is not physically impaired as aforesaid," and that NCL "reserves the right to refuse or revoke passage to anyone" who is, in its sole judgment, "unfit for travel."

59.   As a direct and proximate result of NCL's policies and practices discriminating against people with vision impairments, referenced in paragraph 58 and elsewhere in this Complaint, Stephen Gomes, Joy Stigile, Robert Stigile, and, upon information and belief, other individuals with vision impairments have been denied equal access to, and equal enjoyment of the benefits and services of, NCL's cruise ships.

60.     NCL's actions have caused Mr. Gomes, Joy Stigile, Robert Stigile, and, upon information and belief, other individuals with vision impairments to suffer financial harm, humiliation, emotional distress, frustration, and anxiety.

61.     NCL's conduct generally described in paragraphs 58 through 59 and more specifically described elsewhere in this complaint constitutes discrimination on the basis of disability in violation of sections 302 and 304 of the ADA, 42 U.S.C. §§ 12182 and 12184, and its implementing regulation, 28 C.F.R. Part 36, because NCL's conduct:

a.      Discriminates against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation, in violation of 42 U.S.C. §§ 12182(a) and 12184(a), and 28 C.F.R. §§ 36.201(a) and 36.310;

b.      Imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities in violation of 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12184(b)(1), and 28 C.F.R. §§ 36.301 and 36.310;

c.      Subjects an individual or class of individuals on the basis of a disability or disabilities to a denial of the equal opportunity to participate in or equal benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202;

d.      Affords an individual or class of individuals on the basis of a disability or disabilities with an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations in a manner that is not equal to that afforded to others, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 28 C.F.R. §§ 36.202(b);

     e.     Fails to make reasonable modifications in policies, practices, or

procedures, in violation of 42 U.S.C. §§ 12182(b)(2)(A)(ii) and

12184(b)(2)(A), and 28 C.F.R. §§ 36.302(a) and 36.310; and,

     f.     Provides an individual or class of individuals on the basis of a disability or

disabilities with goods, services, facilities, privileges, advantages or

accommodations that are different from those provided to other

individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28 C.F.R.

§ 36.202(c).

     62.     NCL's general policy and practice imposing requirements on prospective

passengers with disabilities that are not imposed on prospective passengers without disabilities,

and its treatment of Mr. Gomes, Joy Stigile, Robert Stigile, and other individuals with

disabilities, constitutes (a) a pattern or practice of discrimination within the meaning of 42

U.S.C. §12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and (b) discrimination that raises an issue

of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R.

§ 36.503(b).

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court:

     A.     Declare that NCL's discriminatory practices as set forth above violate the

Americans with Disabilities Act, 42 U.S.C. §§ 12101 - 12189, and the U.S. Department of

Justice's implementing regulation, 28 C.F.R. Part 36;

     B.     Enjoin NCL, its officers, agents and employees, and all other persons in active

concert or participation with any of them, from discriminating on the basis of disability against

any individual seeking to participate in a cruise on an NCL cruise ship;

C.    Order NCL to institute and implement policies and procedures that will eliminate discrimination on the basis of disability.

D.    Award compensatory damages against NCL in an amount to be determined at trial in favor of Stephen Gomes, Joy Stigile, Robert Stigile and all other individuals with disabilities who have been injured as a direct and proximate result of NCL's violations of Title III of the ADA;

E.    Assess a civil penalty against the Defendants in the amount authorized by 42 U.S.C. § 12188(b)(2)(C) and 28 C.F.R. § 36.504 to vindicate the public interest; and

F.    Order such other appropriate relief as the interests of justice may require.

Respectfully submitted,

JANET RENO
Attorney General
of the United States

BILL LANN LEE
Assistant Attorney General
Civil Rights Division

BARRY SABIN
ACTING U.S. ATTORNEY
Southern District of Florida

VERONICA HARRELL-JAMES
Assistant United States Attorney
99 N.E. 4th Street, 6th Floor
Miami, Florida 33132
(305) 961-9327
(305) 530-7976 (facsimile)
Fla. Bar No. 644791

JOHN L. WODATCH, Chief
L. IRENE BOWEN, Deputy Chief

DANIEL W. SUTHERLAND
DANIEL I. WERFEL
Attorneys, Disability Rights Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66738
Washington, D.C. 20035-6738
(202) 616-5540, 5510
(202) 307-1197 (facsimile)

January __, 2001

15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-0244-CIV-KING/O'SULLIVAN

UNITED STATES OF AMERICA,
     Plaintiff

v.

NORWEGIAN CRUISE LINES, INC.,
     and
NORWEGIAN CRUISE LINE LIMITED,
     Defendants.

_____/

## ORDER GRANTING MOTION
## FOR A PROTECTIVE ORDER QUASHING DEFENDANTS' SUBPOENA

THIS MATTER having come on before the Court upon the United States' Motion for a

Protective Order Quashing Defendants' Subpoena, and the Court having reviewed the record and

being otherwise fully advised, it is

ORDERED and ADJUDGED that:

1. The Motion is GRANTED.

2. Defendants' requests for deposition of Department of Justice or other government

officials and associated subpoena of documents are hereby quashed.

DONE AND ORDERED at Miami, Miami-Dade County, Florida on this _____ day of

_____, 2001.

By: _____
           UNITED STATES DISTRICT JUDGE

Copies furnished to:
Attorneys for Plaintiff:
Daniel I. Werfel
Veronica Harrell-James
Attorneys for Defendants:
Curtis J. Mase